UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MICHAEL KOLAS**,

    Plaintiff,

v.                                                     6:22-cv-2413-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

# ORDER

Plaintiff Michael Kolas seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 15),[1] Kolas filed an opening brief (Doc. 18), and the Commissioner responded. (Doc. 19). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the appropriate page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B. Factual and procedural history

On March 5, 2020, Kolas applied for supplemental security income. (Tr. 93-94). He asserted an onset date of September 28, 2019, alleging disability due to the following: cranial bleeding, perforation (frontal lobe), aneurysm, chronic lower back, left knee surgery, bipolar disorder, hypertension, possible heart valve replacement, lung complications (hole in lungs), and insomnia. (Tr. 71-72, 99-100, 304). As of the application date, Kolas was 38 years old and had two years of college.

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. § 416.905.

[3] *See* 20 C.F.R. §§ 416.913(a)(2)(i)(A)-(D) (discussing the various categories of work-related abilities), 416.922(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.945(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.994(b)(1)(iv) (defining functional capacity to do basic work activities).

[4] *See* 20 C.F.R. § 416.911(a).

(Tr. 41, 71, 309). He previously worked as an assistant manager at a gas station. (Tr. 91, 140, 310).

On behalf of the administration, a state agency[5] reviewed and denied Kolas's application initially on August 12, 2020, and upon reconsideration on November 23, 2021. (Tr. 71-95, 99-147). At Kolas's request, Administrative Law Judge (ALJ) Angela Neel held a hearing on April 14, 2022. (Tr. 51-70). On May 13, 2022, the ALJ issued an unfavorable decision finding Kolas not disabled. (Tr. 19-42). Kolas's timely request for review by the administration's Appeals Council was denied. (Tr. 1-7). Kolas then brought the matter to this court, and the case is ripe for judicial review.

### C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability);

*see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Kolas had not engaged in substantial gainful activity since March 5, 2020, the application date. (Tr. 21). At step two, the ALJ characterized Kolas's severe impairments as: endocarditis, essential hypertension, and non-rheumatic tricuspid valve disorder; cerebral vascular accident, closed head injury, encephalopathy, and malformation of cerebral vessels with seizure disorder; unspecified neurocognitive disorder; bipolar disorder with depressive disorder; anxiety disorder with post-traumatic stress disorder; ADHD; and nicotine and opioid dependence. (Tr. 21). At step three, the ALJ determined Kolas did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 22).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b). The claimant cannot climb ladders, ropes, or scaffolds. The claimant can frequently climb ramps and stairs, balance, kneel, crouch, crawl, and stoop. The claimant cannot operate a motor vehicle or work at unprotected heights. The claimant can have no more than occasional exposure to extreme temperatures.

> Mentally, the claimant is limited to performing simple tasks. He can have frequent interaction with supervisors, and occasional interactions with coworkers and the public.

(Tr. 23). Consequently, the ALJ found Kolas was unable to perform his past relevant work. (Tr. 40). At step five, the ALJ found Kolas could perform other work that exists in significant numbers in the national economy. (Tr. 41). In support, a vocational expert testified (Tr. 42) that an individual of Kolas's age, education, work experience, and RFC can perform the following representative occupations:

- *Marker,* DOT #209.587-034, light; SVP 2, with 72,000 jobs in the national economy;
- *Final Inspector,* DOT #727.687-054, light, SVP 2, with 38,000 jobs in the national economy;
- *Assembler Small Products I,* DOT #739.687-030, light, SVP 2, with 68,000 jobs in the economy.[6]

Thus, for purposes of the Act, the ALJ concluded Kolas was not disabled from March 5, 2020, the application date, through May 13, 2022, the date of the decision.

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II.   Analysis

The issue on appeal is whether substantial evidence supports the ALJ's finding that the opinions of Dr. Alex Perdomo were unpersuasive.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the

ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

    **B.**    **Substantial evidence supports the ALJ's discount of Dr. Perdomo's opinion.**

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. § 416.920c. No longer is an ALJ to afford deferential weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 416.920c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. § 416.920c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources" are consistent with the medical opinion presented. 20 C.F.R. § 416.920c(c)(2). Thus,

persuasiveness, rather than weight, is the object at hand when assessing a medical opinion. 20 C.F.R. §§ 416.920c, 416.927(c).

Kolas underwent a single examination with Dr. Perdomo on July 1, 2020. (Tr. 2250-53). Among other things, Dr. Perdomo opined that Kolas can stand or walk for no more than four hours in an eight-hour workday and that he needed to use a cane at all times. (Tr. 2251). But the ALJ found these opinions unpersuasive. The ALJ explained that Dr. Perdomo's own notes indicate Kolas had normal coordination and station, and his gait was only "slightly ataxic."[7] (Tr. 2251). Tellingly, Dr. Perdomo personally observed that Kolas could walk about ten feet without any assistance, he was able to move from the chair to the examination table without assistance, he had full range of motion of his lower extremities, and he was able to stand on his heels and toes without issue. (Tr. 2250-51).

The ALJ also determined that Dr. Perdomo's opinion was inconsistent with the record. The record is replete with normal findings about Kolas's gait and ability to ambulate. (Tr. 1667, 1670, 1735, 1737, 1739, 1784, 1808, 2046, 2047, 2278, 3644, 3765, 3769, 3803-04, 3809). And the ALJ found the MRI of Kolas's spine did not support Dr. Perdomo's extreme limitations. (Tr. 40). Kolas's reported use of an

---

[7] An "ataxic" gait is "'an unsteady, uncoordinated walk, with a wide base and the feet thrown out, coming down first on the heel and then on the toes with a double tap'" that is "caused by neurological abnormalities or disorders." *Wade v. Berryhill*, No. 6:17-cv-01395-TMP, 2018 WL 4566251, *4 (N.D. Ala. Sept. 24, 2018) (citing an online medical dictionary).

assistive device is also inconsistent throughout the record. For instance, on February 2, 2022, Kolas appeared for an examination with a nurse practitioner who observed a normal gait and no use of an assistive device. (Tr. 3809). Moreover, Dr. Perdomo never reviewed any of Kolas's medical records when formulating his opinions. (Tr. 2251). Thus, substantial evidence supports the ALJ's supportability and consistency findings. *See* 20 C.F.R § 416.920c(b)(2); *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record[.]").[8]

In protest, Kolas points to contrary evidence that supports Dr. Perdomo's opinions. For instance, he cites Dr. Perdomo's findings that he has poor balance and a decreased range of motion in the lumbar spine. And, although he could walk ten feet without assistance, he needed a cane to walk all the way down the hallway. He also cites the MRI (from 2015) showing degenerative disc disease as well as other records indicating he had an antalgic[9] gait and was using a cane. (Doc. 18 at 5-6).

---

[8] When considering medical opinions, the ALJ also considers the frequency of the claimant's visits with the medical source. 20 C.F.R. § 416.920c(c)(3)(ii). As previously observed, Kolas treated with Dr. Perdomo only once. This provides additional support for the ALJ's discount of Dr. Perdomo's opinions.

[9] An "antalgic" gait is "'a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase' without neurological involvement." *Wade*, 2018 WL 4566251, *4 (citing an online medical dictionary). This is inconsistent with Dr. Perdomo's finding that Kolas's gait was "slightly *ataxic*," further demonstrating the inconsistency throughout the record.

But the cited records denoting his "antalgic" gait and cane usage (Tr. 1515, 1518, 1521, 1525, 1530) predate not only Kolas's SSI application, but the alleged onset date, so they have little utility. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018).[10]

Kolas also cites a passage from SSR 96-9p, arguing the ALJ was required to account for, what he views as, the medical necessity of his hand-held assistive device (cane) when formulating the RFC. (Doc. 18 at 4). The cited provision states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

1996 WL 374185, *7 (July 2, 1996). Dr. Perdomo's opinion was supposed to accomplish this purpose. But, on its face, this SSR is inapplicable.

The purpose of this SSR is "[t]o explain the Social Security Administration's policies regarding the impact of a [RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work." *Id.* at *1. But the RFC does not limit Kolas to less than sedentary work, or even sedentary work. It limits him to light work. So this SSR has no place here. *See Machicote v. Comm'r of Soc. Sec.*, No. 6:20-cv-1907-GKS-EJK, 2022 WL 769997, *4 (M.D. Fla. Jan. 3, 2022),

---

[10] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

*report and recommendation adopted*, 2022 WL 768017 (Mar. 14, 2022) (collecting cases and holding SSR 96-9p does not apply in cases where the claimant is found to have an RFC to perform more than sedentary work). And even if the cited passage was instructive, it does not require an ALJ to find an assistive device is medically required. Rather, it outlines the minimum showing a claimant must make before an ALJ will make such a determination, mandating only that the ALJ "always consider the particular facts of a case." 1996 WL 374185, at *7. Since the ALJ's rejection of Dr. Perdomo's opinion is supported by substantial evidence, the ALJ complied with any purported obligation under this SSR. *See Wright v. Colvin*, No. cv 313-079, 2014 WL 5591058, *5 (S.D. Ga. Nov. 3, 2014) ("In affirmatively rejecting the need for the cane and giving reasons based on substantial evidence, the ALJ performed the analysis required by SSR 96–9p.").

Ultimately, Kolas's appeal asks the court to do what it cannot: reweigh the evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Simply citing other record evidence that supports his position will not suffice. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (noting a claimant "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). So the ALJ's decision must be affirmed.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 25, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge